IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ROBIN BAKER,                                   No. 3:15-cv-00314-HZ

          Plaintiff,

    v.

CAROLYN W. COLVIN, Acting            OPINION & ORDER
Commissioner of Social Security,

          Defendant.

H. Peter Evans
600 S.W. Broadway, Suite 405
Portland, Oregon 97205

      Attorney for Plaintiff

Billy J. Williams
UNITED STATES ATTORNEY
District of Oregon
Janice E. Hebert
ASSISTANT UNITED STATES ATTORNEY
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204-2902

/ / /

1 - OPINION & ORDER

John C. Lamont
SPECIAL ASSISTANT UNITED STATES ATTORNEY
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington 98104-7075

     Attorneys for Defendant

HERNANDEZ, District Judge:

     Plaintiff Robin Baker brings this action seeking judicial review of the Commissioner's final decision to deny disability insurance benefits (DIB) and supplemental security income (SSI). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1383(c)(3)). I affirm the Commissioner's decision.

## PROCEDURAL BACKGROUND

     Plaintiff applied for DIB and SSI on June 16, 2011, with a protected filing date of May 25, 2011. Tr. 258-66 (DIB), 267-71 (SSI); see also Tr. 16 (noting protected filing date of May 25, 2011). She alleged an onset date of December 31, 2007. Tr. 260, 267. Her applications were denied initially and on reconsideration. Tr. 93-108, 110, 142-43 (DIB initial); Tr. 111-24, 139, 150-51 (DIB reconsideration); Tr. 78-92, 109, 144-45 (SSI initial); Tr. 125-38, 140, 152-54 (SSI reconsideration).

     On September 10, 2013, Plaintiff appeared, with counsel, for a hearing before an Administrative Law Judge (ALJ). Tr. 34-77. On September 19, 2013, the ALJ found Plaintiff not disabled. Tr. 16-33. The Appeals Council denied review. Tr. 1-6.

## FACTUAL BACKGROUND

     Plaintiff alleges disability based on having chronic obstructive pulmonary disease

2 - OPINION & ORDER

(COPD), arthritis, depression, and hearing loss in both ears.  Tr. 283.  At the time of the hearing,

she was fifty-three years old.  Tr. 260 (showing date of birth).  She completed tenth grade and

then obtained a General Equivalency Degree (GED).  Tr. 44.  She has past relevant work

experience as a production worker, laundry sorter, and garment sorter/sewer.  Tr. 26; see also Tr.

70 (identifying past relevant work at the hearing).

## SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if unable to "engage in any substantial gainful activity by reason of

any medically determinable physical or mental impairment which . . . has lasted or can be

expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. §§

423(d)(1)(A), 1382c(3)(a).

Disability claims are evaluated according to a five-step procedure.  See Valentine v.

Comm'r, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step

procedure to determine disability).   The claimant bears the ultimate burden of proving disability.

Id.

In the first step, the Commissioner determines whether a claimant is engaged in

"substantial gainful activity."  If so, the claimant is not disabled.  Bowen v. Yuckert, 482 U.S.

137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b).  In step two, the Commissioner

determines whether the claimant has a "medically severe impairment or combination of

impairments."  Yuckert, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c).  If not, the

claimant is not disabled.

In step three, the Commissioner determines whether plaintiff's impairments, singly or in

combination, meet or equal "one of a number of listed impairments that the [Commissioner]

3 - OPINION & ORDER

acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d).  If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four.  Yuckert, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity (RFC) to perform "past relevant work."  20 C.F.R. §§ 404.1520(e), 416.920(e).  If the claimant can, the claimant is not disabled.  If the claimant cannot perform past relevant work, the burden shifts to the Commissioner.  In step five, the Commissioner must establish that the claimant can perform other work.  Yuckert, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f).  If the Commissioner meets his burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled.  20 C.F.R. §§ 404.1566, 416.966.

### THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since her alleged onset date through her date of last insured.  Tr. 19.  Next, at steps two and three, the ALJ determined that Plaintiff has severe impairments of alcohol abuse/dependence; COPD; degenerative disc disease (DDD) of the cervical spine with spondylosis, stenosis, and pain; and depression.  Id.  He also found that she had a number of other impairments, which considered singly or in combination, were non-severe.  Id. Considering Plaintiff's substance abuse disorders, the ALJ determined at step three that Plaintiff's impairments met Listed Impairments 12.04 (Affective Disorders) and 12.09 (Substance Addiction Disorders).  Tr. 20-22.  The ALL also found that if Plaintiff stopped her substance abuse, she had severe impairments of COPD; DDD of the cervical spine with spondylosis,

4 - OPINION & ORDER

stenosis, and pain; thoracic kyphosos; and depression.  Tr. 22.  The only difference between the

two impairment findings is the omission of alcohol abuse and the presence of thoracic kyphosos

in the impairments absent substance abuse.  Tr. 19, 22.  Absent her substance abuse, her

impairments, considered singly or in combination, did not meet or equal a listed impairment.  Tr.

23.

>    At step four, the ALJ concluded that Plaintiff has the RFC to
>
>    perform less than the full range of light work as defined in 20 CFR 404.1567(b) and
>    416.967(b) except she would be able to lift up to 20 pounds occasionally, plus lift
>    and carry up to 10 pounds frequently in light work as defined by the regulations.
>    However, she can stand and walk a combined total of 4 hours in an 8-hour day,
>    and may sit 6 hours in an 8-hour day.  She must be allowed to sit or stand
>    alternately at 45 to 60 minute intervals for 2 to 5 minutes, during which period she
>    may remain on task.  The claimant may frequently climb ramps and stairs,
>    occasionally crawl, but may never climb ladders, ropes and scaffolds.  She may
>    frequently engage in handling and fingering with bilateral upper extremities.  The
>    claimant must avoid more than occasional exposure to loud noise, and should
>    avoid even moderate exposure to irritants such as fumes, odors, dust, gases,
>    chemicals and poorly ventilated spaces, and avoid hazards such as dangerous
>    machinery and unsecured heights.  The undersigned also finds the claimant is
>    fully capable of learning, remembering and performing simple, routine and
>    repetitive 2 and 3-step work tasks, which are performed at a routine and
>    predictable work pace.

Tr. 24.  With this RFC, and if she stopped the substance use, the ALJ concluded that Plaintiff is

unable to perform any of her past relevant work.  However, at step five, the ALJ determined that

if she stopped the substance use, Plaintiff is able to perform jobs that exist in significant numbers

in the economy such as small products assembly and cashiering.  Tr. 26-27.

    The ALJ concluded that Plaintiff's substance abuse disorder is a contributing factor

material to the determination of disability because she would not be disabled if she stopped the

substance use.  Tr. 27.  Thus, the ALJ determined that Plaintiff is not disabled.  Id.

5 - OPINION & ORDER

STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (internal quotation marks omitted). The court considers the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. Id.; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." Vasquez, 572 F.3d at 591 (internal quotation marks and brackets omitted); see also Massachi v. Astrue, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's") (internal quotation marks omitted).

DISCUSSION

Plaintiff alleges that the ALJ erred (1) by improperly rejecting an opinion of a treating neurosurgeon; (2) by finding her subjective limitations testimony not entirely credible; and (3) in formulating the RFC.

I.  Treating Physician Dr. Brett

On May 16, 2011, Plaintiff was examined by neurosurgeon Dr. Darrell Brett, M.D., after having gone to the emergency room for a "several month history of increasing neck pain and some tingling in the left neck but no arm pain." Tr. 380. On physical exam, Plaintiff had cervical range of motion of 30 degrees in forward flexion, 30 degrees in extension, 15 degrees on

6 - OPINION & ORDER

lateral bending in either direction, and 45 degrees on lateral rotation in either direction.  Tr. 381.

Plaintiff had full motor function (5/5) in both upper extremities.  Tr. 381-82.  However, she had

numbness in the right posterior triceps.  Tr. 382.  Dr. Brett's chart note refers to a May 4, 2011

MRI showing multi-level acquired spinal stenosis, most notable at C5-6 and C6-7, with

foraminal narrowing at both levels.  Id.

    As for a diagnostic impression and recommendations, Dr. Brett noted that Plaintiff had

multi-level degenerative disc changes and spondylolysis without significant radicular symptoms.

Tr. 382.  She also had "acquired spinal stenosis" which was not severe.  Id.  Conservative

measures were recommended.  Id.  She received prescriptions for Norco, Flexeril, and Dalmane,

and was discouraged from drinking alcohol while taking them.  Id.  Although the chart note states

that Plaintiff was to be reassessed in six weeks, there are no other visits with Dr. Brett in the

record.

    On that same date, Dr. Brett wrote a "To Whom it May Concern" letter regarding his

examination of Plaintiff.  Tr. 379.  There, he stated that Plaintiff had "four level disc pathology

from C3-7 with multiple areas of nerve impingement and developing spinal stenosis."  Id.  He

also wrote that Plaintiff denied radicular pain, paresthesia, or symptoms of myelopathy.  Id.  Dr.

Brett did not consider Plaintiff to be a surgical candidate unless she developed neurologic deficit

or radicular/myelopathic symptoms.  Id.  He noted the three prescriptions and his discussion with

her of "common sense restrictions with her activities."  Id.  He further noted the plan to reassess

her in six weeks, which as indicated above, apparently did not occur.  Id.

    In his opinion, the ALJ initially discussed Dr. Brett's opinion in support of his

determination that Plaintiff's cervical spine DDD is a severe impairment.  Tr. 20.  However, in

7 - OPINION & ORDER

discussing the severity of her impairments absent her substance abuse, the ALJ gave little weight to the portion of Dr. Brett's letter stating that Plaintiff had "multiple areas of nerve impingement." Tr. 22. The ALJ noted that no impingement was demonstrated on the MRI. Id. (citing Tr. 401-02, 551-52). The ALJ explained that "Dr. Brett apparently interprets spinal cord compression as being 'nerve impingement,' despite the radiologist not finding impingement stenosis." Id.

Plaintiff argues that the ALJ erred by rejecting the opinion of treating physician Dr. Brett "in favor of the ALJ's interpretation of the radiologists' interpretation of Plaintiff's MRI." Pl.'s Op. Brief at 13. Plaintiff argues that because the radiologist did not examine Plaintiff, the ALJ's understanding of the radiologist's interpretation cannot support giving only little weight to the opinion of her treating neurosurgeon.

Social security law recognizes three types of physicians: (1) treating, (2) examining, and (3) nonexamining. Holohan v. Massanari, 246 F.3d 1195, 1201-02 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Generally, more weight is given to the opinion of a treating physician than to the opinion of those who do not actually treat the claimant. Id.; 20 C.F.R. §§ 1527(c)(1)-(2), 416.927(c)(1)-(2).

If the treating physician's medical opinion is supported by medically acceptable diagnostic techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight. Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007); Holohan, 246 F.3d at 1202. If a treating physician's opinion is not given "controlling weight" because it is not "well-supported" or because it is inconsistent with other substantial evidence in the record, the ALJ must still articulate the relevant weight to be given to the opinion under the factors provided for in 20 C.F.R. §§ 1527(d)(2), 416.927(d)(2). Orn, 495 F.3d at 631.

8 - OPINION & ORDER

If the treating physician's opinion is not contradicted by another doctor, the ALJ may reject it only for "clear and convincing" reasons. Id. at 632. Even if the treating physician's opinion is contradicted by another doctor, the ALJ may not reject the treating physician's opinion without providing "specific and legitimate reasons" which are supported by substantial evidence in the record. Id.

There are two May 4, 2011 radiology reports in the record. In one, radiologist Dr. Brant Wommack, M.D., interpreted Plaintiff's cervical spine x-rays as showing moderate degenerative changes at C3-7 without any visible acute bony abnormality. Tr. 400. In the other, radiologist Dr. Jeffrey Moser, M.D., interpreted Plaintiff's cervical spine MRI as showing that she had extensive acquired central canal stenosis throughout the cervical spine, "that most severely affected C5-6 and C6-7 where moderate central acquired canal stenosis is seen." Tr. 402. Additionally, severe foraminal narrowing was present bilaterally at C6-7 and on the left at C5-6. Id. Then, in November 2012, Plaintiff had another cervical spine MRI which showed extensive degenerative disc disease with disc protrusions and bilateral uncovertebral osteophytes at the C3-4 through the C6-7 levels, resulting in moderate or severe cental canal stenosis depending on the disc level, and moderate or severe bilateral foraminal narrowing, depending on the disc level. Tr. 551-52.

Plaintiff's argument is premised on her disagreement with the ALJ's understanding of the radiologists' MRI reports. She suggests that because Dr. Brett is the treating physician, his opinion as to the MRI results controls over the non-examining radiologists' reports absent clear and convincing reasons supported by substantial evidence in the record. She argues that the ALJ's interpretation of the radiologists' reports does not meet that clear and convincing standard.

I disagree.  The ALJ was correct in noting that neither radiologist interpreted the MRIs as showing any actual nerve impingement.  While a radiologist is not a  "treating" physician in the sense of evaluating the patient in person and providing care instructions, a radiologist is most certainly an expert in interpreting radiological studies.  Dr. Brett, who as a neurosurgeon is an expert in his field as well, saw Plaintiff only once and thus, his opinion is entitled to less weight than that of a treating physician with a long, established relationship with a patient.  See 20 C.F.R. §§ 404.1527(d)(2)(i), (ii), 416.927(d)(2)(i), (ii) (weight accorded a treating physician's opinion depends on the length of the treatment relationship, the frequency of visits, and the nature and extent of treatment received).  The ALJ did not err in relying on the radiologists' interpretations of Plaintiff's MRI results in giving little weight to Dr. Brett's opinion regarding Plaintiff's nerve impingement.

Even if the ALJ erred, the error is harmless.  The ALJ's discussion of Dr. Brett's opinion regarding nerve impingement was in the context of determining Plaintiff's limitations absent her substance abuse.  Tr. 22-23.  In addition to rejecting Dr. Brett's nerve impingement opinion, the ALJ noted that in December 2012, Plaintiff alleged back, neck, and hand pain but not weakness, and that the pain began while she was still working more than three years earlier.  Tr. 22.  The ALJ also noted that her upper extremity muscle strength was consistently at 4/5 or 5/5.  Id.  And, while she demonstrated reduced strength in her lower extremities upon testing, objectively she had no radicular symptoms, no sensory loss to pinprick, she was able to ambulate normally, she demonstrated intact coordination, and she had no obvious imbalance.  Id.  Based on the updated records, the ALJ found that there was no worsening of the DDD in the cervical thoracic spine with no foraminal impingement or radiculopathy.  Id.  Nonetheless, he allowed a sit-stand option

so she could change between positions and limited her to light work.  Id.

Any error by the ALJ in rejecting Dr. Brett's nerve impingement opinion is harmless because simply opining that a patient has nerve impingement does not provide any functional description or limitation information.  The ALJ determines to what extent a claimant's impairments limit the claimant's ability to perform work-related functions.  See 20 C.F.R. §§ 404.1545, 416.945 (regarding RFC determinations).  Medical opinions and reports should include, *inter alia*, a "statement about what you can still do despite your impairments(s)[.]" 20 C.F.R. §§ 404.1513(b)(6), 416.913(b)(6).  An ALJ may properly disregard a medical opinion which does not "show how [a claimant's] symptoms translate into specific functional deficits which preclude work activity."  Morgan v. Comm'r, 169 F.3d 595, 601 (9th Cir. 1999); see also Goin-Sprague v. Colvin, No. 6:14-cv-00897-CL, 2015 WL 6121982, at *7 (D. Or. Oct. 15, 2015) (upholding ALJ's rejection of physician opinion which failed "to evince any specific functional impairment").

Nothing in Dr. Brett's chart note or letter provides a basis for any functional limitations.  And, in fact, as Defendant notes, to the extent the note or letter are probative of Plaintiff's functioning, they undermine her allegations of disability.  Although Plaintiff stated she experienced tingling and numbness in her extremities and severe back pain limiting her to sitting or standing to no more than two hours per day, Tr. 55-59, Dr. Brett's treatment notes record unimpaired upper extremity motor function and numbness in the posterior triceps only.  Tr. 381-82.  He further stated that she had disc changes and spondylosis *without* significant radicular symptoms and that her spinal stenosis was not severe.  Id.  Finally, his letter stated that Plaintiff denied radicular pain, paresthesia, or symptoms of myelopathy.  Tr. 379.

11 - OPINION & ORDER

The ALJ did not err in rejecting Dr. Brett's opinion that she suffered from nerve impingement. The radiologists' reports, which do not include that impairment, provide substantial evidence upon which the ALJ could rely. Alternatively, even if the ALJ erred, the error is harmless because Dr. Brett's nerve impingement opinion has no probative functional assessment.

II. Credibility

The ALJ first discussed Plaintiff's credibility when determining that her impairments, including her substance abuse disorder, meet Listed Impairments 12.04 and 12.09. Tr. 20-21. At that point, the ALJ found that Plaintiff's allegations regarding her symptoms and limitations were minimally credible. Tr. 21. The ALJ discussed Plaintiff's credibility again in assessing her RFC if she stopped the substance abuse. Tr. 24-25. There, he said that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible. Tr. 25.

In support of the credibility findings, the ALJ explained that Plaintiff failed to comply with recommended medical treatment because she "refuse[d] to stop drinking and smoking despite numerous medical warnings to do so." Tr. 21, 25. The ALJ stated that while her alleged disability onset date was December 31, 2007, the fact that she did not file her disability applications until May 2011, almost three and one-half years later, raised questions regarding her allegations. Id. Next, the ALJ noted that Plaintiff had not stopped working because of disability but because she was laid off secondary to the economy. Id. The ALJ further remarked that Plaintiff alleged a long list of impairments, the majority of which either have no supporting records or no medically determinable diagnoses. Id. Finally, the ALJ found that she had no

12 - OPINION & ORDER

medical records or treatment before 2009, and that no treating source had suggested she could not work, even with her long history of alcohol abuse.  Id.

Plaintiff argues that the ALJ improperly ignored her hearing testimony that she stopped drinking five months ago and had received treatment.  Tr. 61 (testimony of Plaintiff that she stopped drinking on April 12, 2013).  She suggests that the ALJ's discussion of what impairments would remain if she stopped her substance abuse is "arbitrary" and "counterfactual."  Pl.'s Op. Brief at 9.  She further argues that the ALJ should have credited her hearing testimony regarding her symptoms because this testimony was given after she had had no alcohol for five months.

The ALJ is responsible for determining credibility.  Vasquez, 572 F.3d at 591.  Once a claimant shows an underlying impairment and a causal relationship between the impairment and some level of symptoms, clear and convincing reasons are needed to reject a claimant's testimony if there is no evidence of malingering.  Carmickle v. Comm'r, 533 F.3d 1155, 1160 (9th Cir. 2008) (absent affirmative evidence that the plaintiff is malingering, "where the record includes objective medical evidence establishing that the claimant suffers from an impairment that could reasonably produce the symptoms of which he complains, an adverse credibility finding must be based on 'clear and convincing reasons'"); see also Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012) (ALJ engages in two-step analysis to determine credibility:  First, the ALJ determines whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged"; and second, if the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give "specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms.") (internal quotation marks omitted).

When determining the credibility of a plaintiff's complaints of pain or other limitations, the ALJ may properly consider several factors, including the plaintiff's daily activities, inconsistencies in testimony, effectiveness or adverse side effects of any pain medication, and relevant character evidence.  Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995).  The ALJ may also consider the ability to perform household chores, the lack of any side effects from prescribed medications, and the unexplained absence of treatment for excessive pain.  Id.; see also Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) ("The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.") (internal quotation marks omitted).

As the Ninth Circuit explained in Molina;

> In evaluating the claimant's testimony, the ALJ may use ordinary techniques of
> credibility evaluation.  For instance, the ALJ may consider inconsistencies either
> in the claimant's testimony or between the testimony and the claimant's conduct,
> unexplained or inadequately explained failure to seek treatment or to follow a
> prescribed course of treatment, and whether the claimant engages in daily
> activities inconsistent with the alleged symptoms[.]  While a claimant need not
> vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit
> a claimant's testimony when the claimant reports participation in everyday
> activities indicating capacities that are transferable to a work setting[.]  Even
> where those activities suggest some difficulty functioning, they may be grounds
> for discrediting the claimant's testimony to the extent that they contradict claims
> of a totally debilitating impairment.

Molina, 674 F.3d at 1112-13 (citations and internal quotation marks omitted).

The ALJ provided clear and convincing reasons, supported by substantial evidence in the

record, to find Plaintiff's subjective symptoms and limitations testimony not entirely credible. First, even accepting that Plaintiff had stopped drinking several months before the hearing, the ALJ correctly found that she had failed to follow medical recommendations to stop drinking for several years. And, putting aside the alcohol abuse, it is undisputed that she failed to follow medical recommendations to stop smoking, even continuing to smoke while using oxygen. Because the failure to follow prescribed medical treatment is a legitimate basis for finding a claimant not credible, e..g, Molina, 674 F.3d at 1112, the ALJ did not err in relying on Plaintiff's failure to follow treatment recommendations as a basis for rejecting her testimony.

The ALJ may also properly consider that Plaintiff stopped working because she was laid off, not because of her disability. Although in her applications she stated that she stopped working on December 31, 2007 and became disabled the same day because of her impairments, Tr. 279, 283, she told examining psychologist Dr. John Adler, Ph.D., that she stopped working because she was laid off. Tr. 383. While Plaintiff testified that she performed her last job with pain and was relieved when she was laid off, she also testified that she still "wanted to keep my job, whether I was in a lot of pain or not," and she confirmed she left the job because she was laid off, not because her symptoms forced her to quit. Tr. 68. Thus, the ALJ did not err in finding her testimony of disabling-level symptoms to be not entirely credible. See Bruton v. Massanari, 268 F.3d 824, 828 (9th Cir. 2001) (upholding credibility finding where the claimant stated at the hearing and to at least one doctor that he left his job because he was laid off, not because he was injured).

Additionally, the ALJ may consider objective medical evidence in determining a claimant's credibility regarding subjective symptom testimony, as long as the ALJ does not reject

such testimony solely because it is unsubstantiated by the objective medical evidence.  20 C.F.R.

§§ 404.1529(c), 416.929(c); <u>Rollins v. Massanari</u>, 261 F.3d 853, 856, 857 (9th Cir. 2001) ("Once

a claimant produces objective medical evidence of an underlying impairment, an ALJ may not

reject a claimant's subjective complaints based solely on a lack of objective medical evidence to

fully corroborate the alleged severity of pain[;] . . .  While subjective pain testimony cannot be

rejected on the sole ground that it is not fully corroborated by objective medical evidence, the

medical evidence is still a relevant factor in determining the severity of the claimant's pain and its

disabling effects.") (internal quotation and brackets omitted).  The ALJ found that Plaintiff's

testimony about her symptom severity was undermined by the lack of medical records before

2009 and the fact that no treating source had found she could not work.  Given that the ALJ

provided other clear and convincing reasons for finding Plaintiff not credible which were

supported by substantial evidence in the record, the ALJ did not err by considering objective

medical evidence as well.

Finally, Plaintiff's argument about the ALJ's determination regarding her impairments

absent substance abuse is without merit.  The ALJ determined that Plaintiff would still suffer

from several severe impairments if she stopped her substance abuse.  Tr. 22-23.[1]  Although he

---

[1]  One of the impairments the ALJ noted as being present and severe even absent
Plaintiff's substance abuse is "thoracic kyphosis."  Tr. 22.  Curiously, this impairment, which is
an excessive curvature of the spine, was not mentioned at all in the list of impairments the ALJ
previously discussed before eliminating substance abuse.  Tr. 19.  Plaintiff indicates that the
inclusion of this impairment in the list without substance abuse is "out of the blue."  Pl.'s Op.
Brief at 10.  She states that because this is without explanation, the decision must be remanded
and a new hearing conducted.  The list of impairments the ALJ found to be severe and non-
severe absent substance abuse is identical to the list of those impairments considering substance
abuse except for thoracic kyphosis and alcohol abuse/dependence.  Tr. 19, 22.  More likely than
not, the only impairment the ALJ meant to exclude from the second list was her alcohol
abuse/dependence.  Thus, the most likely explanation for the presence of "thoracic kyphosis" in

found that those impairments did not meet a listed impairment and further found that she could

work consistent with the RFC he provided, his findings are supported by citations to the record

and a thorough analysis.  I reject Plaintiff's suggestion that the ALJ's credibility determination or

his decision regarding her impairments without substance abuse are invalid.

III.  RFC

Plaintiff argues that the ALJ's RFC is flawed because the ALJ failed to comply with the

Social Security Administration's (SSA) own requirements as set forth in Social Security Ruling

(SSR) 96-8p, available at 1996 WL 374186.  SSR 96-8p is a policy interpretation explaining that

the RFC assessment must identify functional limitations and assess the claimant's "work-related

abilities on a function-by-function basis."  SSR 96-8p, 1996 WL 374186, at *1.  In ascertaining

Plaintiff's RFC, the ALJ discussed the medical evidence, Plaintiff's substance abuse history,

Plaintiff's subjective symptoms, and the Third Party Function report of Plaintiff's daughter.  Tr.

24-25.  The ALJ determined that Plaintiff could perform less than the full range of light work as

defined in the applicable regulations.  Tr. 24.  The ALJ then went on to explain the limitations in

detail, including limits on lifting, carrying, standing, walking, and climbing.  Id.  The Ninth

Circuit has held that this is sufficient to comply with SSR 96-8p.  See Buckner-Larkin v. Astrue,

450 F. App'x 626, 627 (9th Cir. 2011) (ALJ's finding in RFC that the claimant could perform

"sedentary" work was sufficient to comply with SSR 96-8p because "sedentary" as defined in the

regulations, "includes well-defined function-by-function parameters"); Mason v. Comm'r, 379 F.

---

the second list is that the ALJ simply forgot to include it in the first list.  As a result, the inclusion
of the impairment at this point does not, contrary to Plaintiff's suggestion, undermine the ALJ's
otherwise valid findings and reasoning.  And, even if the inclusion of thoracic kyphosis in the
second list is without explanation, it does not provide a basis for a new hearing.

App'x 638, 639 (9th Cir. 2010) ("ALJ is not required . . . to engage in a function-by-function analysis under SSR 96–8p" which "requires only that the ALJ discuss how evidence supports the residual function capacity assessment and explain how the ALJ resolved material inconsistencies or ambiguities in evidence[.]").  The ALJ complied with SSR 96-8p.

CONCLUSION

The Commissioner's decision is affirmed.

IT IS SO ORDERED.

Dated this ____14____ day of ____June____, 2016

Marco A. Hernandez
United States District Judge

18 - OPINION & ORDER